UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| COLETTE THOMAS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 3:10-CV-476-TLS |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | | |

**REPORT AND RECOMMENDATION**

On August 30, 2011, Plaintiff, Colette Thomas ("Thomas"), filed her opening brief asking this Court to enter judgment in her favor by reversing the ALJ's judgment and award benefits or in the alternative remanding the case for further proceedings pursuant to 42 U.S.C. Sec 405(g). On September 28, 2011, Defendant, Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed his response brief. This court issues the following report and recommendation on this motion pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

**I.     PROCEDURE**

On September 28, 2007, Thomas filed an application for supplemental security income, alleging disability beginning August 27, 2007. The claim was initially denied on January 8, 2008, and upon reconsideration on June 2, 2008.

On July 28, 2008, Wash filed a written request for a hearing. (20 C.F.R. 416.1429 *et seq*). Thomas appeared and testified at a hearing held on November 17, 2009, in South Bend, Indiana. In a January 2010 decision, the ALJ denied Thomas's claim. The ALJ found that Thomas had

1

"severe" impairments that significantly affected her ability to work but that she retained the residual functional capacity "RFC" to perform a reduced range of sedentary work. (Tr. 14-15). Considering Thomas's age, education, work experience and RFC, and relying upon the testimony of a vocational expert, the ALJ concluded that Thomas was not disabled and not entitled to SSI because she could perform a significant number of jobs despite her functional limitations. (Tr.18). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review. (Tr. 1-3).

## II. ANALYSIS

### A. Background and Hearing Testimony

#### 1. Medical Evidence

As for the Medical evidence reviewed by the ALJ. There was little evidence in the record to support Thomas's complaints of total disability or even to demonstrate that she received regular treatment for any condition. There is evidence pre-dating Thomas's August 2007 alleged disability onset date showing that she had gastric bypass surgery in December 2005, and sustained minor injuries in a September 2006 car accident (Tr. 212-27, 231-33, 402-07).

Thomas's primary physician in 2007 was Dr. Teters. Thomas saw him with complaints of back, chest, and abdominal pain and shortness of breath. (Tr. 379-381). Physical examination was normal and Dr. Teters advised Plaintiff that she needed to have more regular follow-up care after her bypass. *Id*. At her second appointment with Dr. Teters, Thomas reported burning and tingling in her hands and legs. A neurologic examination of Thomas revealed normal sensation and strength, equal reflexes, and normal coordination (Tr. 376-77). On August 29, 2007 Dr. Teters released Thomas to full time work (Tr. 297). In September 2007, Thomas visited Dr.

Kristl with complaints of tingling in her arms and legs. Dr. Kristl's initial examination revealed possible peripheral neuropathy due to decreased vibratory sensation and absent ankle reflexes. (Tr. 355-56). Electromyographic (EMG) testing revealed mild carpal tunnel syndrome and mild neuropathy. (Tr. 350-351).

Thomas sought emergency room treatment for chest pain in October 2007, but physical examination was normal. (Tr. 271-74). A November 2007 note from Goodwill industries demonstrated that Thomas was released from its Workforce Development Program for non-compliance and failure to maintain contact with the agency. (Tr. 322).

In December 2007, Thomas saw a consultative physician. (Tr. 338-340). Thomas reported pain in her wrists, knees, and ankles and burning pain in her hands and feet; she denied shortness of breath or chest pain (Tr. 338). Thomas had a normal, stable gait upon examination and exhibited full range of motion without swelling in all joints. She was able to squat and get on and off the examination table with no complaints and she exhibited excellent strength and normal sensation. (Tr. 339). The physician concluded that there were no impairments related to gait, coordination, hearing, speech, memory, concentration, attention, social interaction, or fine and gross manual dexterity. (*Id*.). Following the physician's examination, a state agency physician reviewed the medical evidence and opined that Thomas did not have a "severe" physical impairment. (Tr. 342).

Dr. Kristl sent Thomas for a neurological consult with another doctor in January 2009 (Tr. 468-70). A complete neurological examination was normal except for increased reflexes and diminished touch sensation in Thomas's legs and hands. Thomas's strength was excellent, with some give-way weakness and Thomas was able to deep-knee bend without much difficulty and

3

walk with a mildly wide-based gait (Tr. 469). The doctor noted that he had reviewed the treatment notes and all the diagnostic testing and could not determine the cause of Thomas's "very interesting and odd collection of symptoms." *Id*.

In July 2008, and again in November 2009, Dr. Kastl completed a form to allow Thomas to receive food stamps. On both forms he checked the box next to "individual is totally unable to work." (Tr. 472, 477). In contrast, Dr. Kastl completed a November 2009 disability report in which he opined that Thomas was not disabled and that she could work with a 15-pound lifting limitation. (Tr. 478-79). He noted in a "To Whom It May Concern" letter that Thomas had "quite a problem" with generalized pain but that he could not identify any "firm neurologic pathology" (Tr. 393, 467).

2. Hearing Testimony

At the time of the ALJ's decision, Thomas was 36 years old and had some college education. (Tr. 31). At the hearing, Thomas testified that she last worked as a certified nursing assistant in 2004 while she was pregnant with her son. (Tr. 32). She claimed that she often dropped things, had pain in her arms and hands, had a ten-year history of burning and tingling sensations, had pain in her knees, and had difficulty with prolonged sitting or standing (Tr. 34). Thomas estimated that she could stand for only ten minutes and sit for less than five minutes at a time. (Tr. 41-42). Thomas further claimed that she napped daily and had difficulty with daily activities although she tried to help around the house. Finally, she and her husband both testified that she sometimes burned herself while cooking. (Tr. 37-38, 40, 44-45).

In addition to Thomas and her husband, a vocational expert (VE) testified at the hearing. The ALJ asked the vocational expert whether he could identify any jobs that could be performed

4

by an individual with Thomas's age, education and work experience, who was limited to simple light exertion work that required the performance of only one and two-step tasks, required only occasional postural movements, and did not require climbing ladders or scaffolds (Tr. 51-52). The vocational expert testified that such an individual could perform Thomas's past relevant work as well as approximately 2,800 other jobs in Indiana (Tr. 52). The ALJ next asked whether there would be any jobs if an individual with the same limitations in the first hypothetical was further limited to lifting no more than 15 pounds, could only occasionally grasp, and required the option to alternate between sitting and standing at will (Tr. 52-53). The vocational expert testified that such an individual could perform approximately 1,925 jobs in Indiana (Tr. 53).

    3.  <u>New Evidence Submitted by Thomas</u>

Thomas submitted new evidence obtained after the ALJ's decision claiming that her condition has become five times worse. Thomas claims that she has been admitted in a hospital seven times since she was denied social security benefits. Three of her visits came in June 2011 for swelling in her legs. On July 5, 2011, she was admitted to a hospital because her condition worsened. On July 11, 2011 she lost blood and needed two units of replacement. Thomas also visited the hospital on August 17, 2011 where she was later flown by helicopter to Peoria, Illinois to have emergency stomach surgery because she had a multiple number of hernias in her intestines. She was in the hospital for six days. Finally, because of her medical condition, Thomas claims that the doctors at Peoria recommended she use a wheel chair from "here on out."(Doc. No. 20 at 2).

 **B.**  **Standard of Review**

The Social Security Act Authorizes judicial review of the final decision of the agency

5

and indicates that the Commissioner's factual finding must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind the decision to deny benefits." *Zurawski v.*

*Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(quoting *Scott*, 297 F.3d at 595).

### C. Plaintiff's Motion

To be eligible for disability benefits, a Plaintiff must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.§§ 423(d)(1)(A), 1382(c)(a)(3)(A). To be found disabled, the Plaintiff's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C.§§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. Sec(s) 404.1520(e)-(f), 416.920(e)-(f).

Social Security regulations provide a five-step inquiry to evaluate whether Thomas is entitled to benefits. 20 CFR §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments (3) the impairment meets or equals an impairment listed in the regulations; (4) the claimant's RFC leaves her able to do past relevant work; and (5) the claimant is unable to perform other work that exists in significant numbers in the national economy. 20 C.F.R.§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *See also Scheck v. Barnhart*, 357 F.3d 697, 699-700

(7th Cir. 2004).

The Court will address two issues: first, whether substantial evidence in the record supports the ALJ's finding that Thomas was not disabled because she retained the functional capacity to perform a significant number of jobs despite her functional limitations; and, second, whether Thomas's inclusion of new evidence regarding her physical limitations allows this Court to remand this case to the ALJ?

> 1. <u>The ALJ properly weighed the evidence before him and substantially supported his opinion with record evidence.</u>

Thomas fails to articulate a legal reason as to why the ALJ's decision should be reversed. She claims that her condition has been getting worse since her claim for benefits was denied and attempts to prove her worsening condition by attaching medical records taken in 2011.

In contrast, the commissioner correctly points out that the ALJ properly weighed the evidence before him and gave a logical explanation as to why he was denying Social Security Benefits to Thomas.

The ALJ found there were no findings by any treating or examining physician or as a result of any diagnostic or imagining tests that Thomas's severe physical impairments either individually or in combination meet or medically equal the criteria of any listed impairment, including the criteria of peripheral neuropathies. *Id*.

The ALJ further found that Thomas had the RFC to perform less than the full range of sedentary work as that level is defined in 20 C.F.R. 416.967(a). She could lift 15 pounds occasionally; should have the option to sit or stand at will; can never climb ladders, ropes or scaffolds; could occasionally climb stairs and ramps, balance, stoop, crouch, crawl, and kneel; could only occasionally grasp with her bilateral hands; and was limited to simple, repetitive tasks

due to the side effects of her medication. (Tr. 15). Dr. Kastl, Thomas's treating physician, also opined that Thomas could work with a 15 pound weight limitation and there were no medical opinions in the record finding that Thomas had more significant limitations. Two physicians on the record and the reviewing state agency physician determined that Thomas did not have any impairments in functioning as a result of her alleged symptoms (Tr. 340, 342).

In addition to the medical opinions that Thomas had no impairments, the ALJ also considered Thomas's subjective complaints and found that Thomas should be limited to sedentary work that allowed her to alternate as needed between sitting and standing. Furthermore, the ALJ found that Thomas had impairments in her hands or arms and limited her to work that only required limited grasping. Finally, the ALJ took into account Thomas's complaints of memory loss and limited Thomas's work to repetitive tasks. The ALJ found that Thomas could perform a significantly reduced range of sedentary work despite the limitations caused by her impairments.(Tr. 15). Considering Thomas's vocational profile and RFC, a vocational expert testified that Thomas could perform at least 1,925 jobs in Indiana. (Tr. 52-53).

In order for this Court to reverse the ALJ's assessment of Thomas's credibility, this Court would need to determine the ALJ's assessment was "patently wrong." *Getch v. Astrue* 539 F.3d 473, 483 (7th Cir. 2008). Furthermore, although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Id*.

With regard to issues of credibility of Thomas's subjective complaints, the ALJ properly considered Thomas's treatment history because no physician placed physical limitations on

Thomas beyond those in the ALJ's RFC, Thomas's young age and education level, Thomas's daily activities, and the fact that Thomas had unsuccessfully applied for disability benefits four times since the age of 23. Because, the ALJ found that Thomas's statements concerning the intensity, persistence and limiting of effects of her symptoms were not consistent with or fully supported by the medical and other evidence of record, the Court finds that substantial evidence supports the ALJ's findings on issues of credibility and the weight to be given the evidence of record. *See Nelson v. Apfel*, 131 F.3d 1228, 137 (7th Cir. 1997)(*stating* ALJ's are in the best position to assess the forthrightness of claimants, the courts afford their credibility determinations special deference.) *See also Getch* at 539 F.3d 473, 483. Based on the above findings, the ALJ properly found the claimant is not disabled under § 1614(a)(3)(A) of the Social Security Act.

        2.     <u>Thomas's Inclusion of new evidence cannot be used to reverse the ALJ's decision to deny her SSI</u>.

Thomas asks the Court to remand his case back to the Social Security Commissioner for consideration of additional evidence. A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."42 U.S.C. §405(g); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins*, 107 F.3d at 1296. New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999). Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time

period encompassed by the disability application under review." *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990).

The "new" evidence introduced by Thomas comes in the form of 2011 hospital visits. With respect to the medical records from the 2011 hospital visits, Thomas concedes the treatment reflected in those records was undertaken nearly one and a half years after the ALJ rendered his decision. None of the proffered evidence speaks to Thomas's condition as it existed at or prior to the time of the administrative hearing. Thomas argues that this distinction is irrelevant because the records document treatment for the very same ailments alleged to constitute her disability in the proceedings below as opposed to reflecting an entirely new injury or disabling condition that first developed after the hearing. However, the Seventh Circuit Court of Appeals has held that medical records "postdating the hearing" and that "speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration" do not meet the standard for new and material evidence. *Kapusta*, 900 F.2d at 97. See *also Godsey v. Bowen*, 832 F.2d 443, 445 (7th Cir. 1987)("The evidence here was immaterial ... since the fact that her condition had deteriorated by 1986 does not show that in 1983 it was otherwise than found at the administrative hearing."); *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir. 1989)(remand is appropriate only where the new evidence is "material to the claimant's condition during the relevant time period encompassed by the disability application under review"); 20 C.F.R.§ 404.970(b)(Appeals Council will consider new and material evidence "if it relates to the period on or before the date of the administrative law judge hearing decision.").

Thus, medical records that document Thomas's condition as it existed nearly two years

after the ALJ rendered his decision, while "new," do not constitute "material" evidence for purposes of a potential remand pursuant to 42 U.S.C. §405(g). As previously mentioned, evidence is material only to the extent that it could have affected the outcome of the ALJ's decision. Medical records documenting Thomas's medical condition as it existed in the summer of 2011 could not have affected the bottom line of a decision rendered in January of 2010.

### III. Conclusion

Because the ALJ properly reviewed the evidence before him and provided an accurate and logical bridge using the evidence to support his conclusions, the Court finds that the ALJ's opinion is supported by substantial evidence. Furthermore, because Thomas has failed to introduce new evidence that is material and relates back to the ALJ's decision, the Court finds that there is no need to remand this case to the ALJ. Accordingly, this Court **RECOMMENDS** that the ALJ's decision be **AFFIRMED**.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED**

Dated December 2, 2011

S/Christopher A.Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge